IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Carolyn E. Reed-Smith, <br><br>    Plaintiff, <br><br> vs. <br><br>Spartanburg County School District Seven, <br><br>    Defendant. | Civil Action No. 7:11-970-JMC -KFM <br><br>**REPORT OF MAGISTRATE JUDGE** |

   This matter is before the court on the defendant's motion for summary judgment (doc. 40). The plaintiff alleges retaliation and race and sex discrimination claims in violation of Title VII of the Civil Rights Act of 1964, as amended, against her former employer, along with violations of several other federal statutes.

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

   In the motion for summary judgment, the defendant states that "[o]n October 11, 2011, [it] served its First Set of Requests for Admission on the plaintiff's counsel. The record before the court shows that the plaintiff has failed to respond in any fashion" (def. m.s.j. at 2). Defense counsel Carlos Johnson submitted his affidavit stating that plaintiff's counsel was served with the requests on October 11, 2011, and the plaintiff failed to serve written answers or objections, or otherwise respond in any manner, to the requests (Carlos Johnson aff. ¶¶ 1-5, doc. 40-2). In her response in opposition to the motion for summary judgment, the plaintiff uses the identical case and record citations provided by the defendant and only reverses the affirmative and negative assertions made by the defendant. Specifically, the plaintiff states, "The Defendant allegedly served its First Set of Requests for Admission on Plaintiffs counsel. Plaintiff has not failed to respond in any

fashion. As a result, the Defendant's requests are not deemed to be admitted, and all matters therein are not conclusively established for purposes of this action. Fed.R.Civ. P. 36(a)(3) and 36(b); *Roper Hosp., Inc. v. U.S.*, 869 F.Supp. 362, 368-369 (D.S.C. 1994)" (pl. resp. m.s.j. at 2).

While the plaintiff vaguely suggests that there is a question as to whether the requests for admission were actually served on counsel, the only evidence in the record shows that plaintiff's counsel was indeed served on October 11, 2011, and failed to respond to the requests for admission. Moreover, as pointed out by the defendant, the conclusory denials contained in the plaintiff's affidavit in opposition to the motion for summary judgment appear to mirror the defendant's requests for admission and thus contradict the suggestion that the requests were not served upon her counsel (*see* pl. aff. ¶¶ 22-37, doc. 49-2; Johnson aff., ex. A, req. admis., doc. 40-2).[1] Accordingly, the defendant's requests are deemed to be admitted, and all matters therein are conclusively established for purposes of this action. Fed.R.Civ.P. 36(a)(3) and 36(b); *Roper*, 869 F. Supp. at 368-69.

### **FACTS PRESENTED**

The plaintiff is an African-American female who was employed by the defendant as a teacher at Whitlock Junior High School (amended comp. ¶ 6; answer ¶ 6). The Principal of Whitlock during the 2008-2009 school year was Mr. Charles Redmond, an African-American male. The Principal of Whitlock during the 2009-2010 school year was Dr. Shawn Foster, an African-American male. During these years, the School District's Assistant Superintendent for Personnel and Pupil Services was Dr. Wanda Andrews, an African-American female, and the School District's Superintendent was Dr. Thomas White, a Caucasian male. Each of these individuals was involved in making decisions relating to the plaintiff's employment, all of which culminated in her termination by the Board in May 2010 (amended comp. ¶¶ 9, 11-13; answer ¶¶ 9, 11-13; Dr. Thomas D. White aff. ¶ 3, doc.

---

[1] The plaintiff's affidavit was signed prior to the filing of the defendant's motion for summary judgment, which includes a copy of the requests for admission as an exhibit.

40-3). The plaintiff claims that all of these individuals harassed and discriminated against her because of her race (amended comp. ¶¶ 9-20).

In addition to her employment with the School District, the plaintiff was a minister and agent for the Village Ministry of Spartanburg (am. comp. ¶ 6; answer ¶ 6). In 2008, the Village Ministry applied for and was awarded a 21st Century Grant through the South Carolina Department of Education (the "SCDE"). The Village Ministry wrote the Grant, and it was the director and fiscal agent for the Grant. The plaintiff's Grant work was solely in her role as agent for the Village Ministry, and it was not a contractual part of her teaching duties or any other aspect of her employment responsibilities with the School District (req. admis. 14; White aff ¶ 9). The plaintiff was instructed several times to not allow her involvement with the Grant to interfere with her primary teaching responsibilities (White aff. ¶ 9).

At the Village Ministry's request, the School District agreed to serve as a collaborative partner to provide basic services for the Grant program (amended. comp. ¶ 6; answer ¶ 6). The School District allowed the Village Ministry to offer the program to Whitlock students and to use Whitlock's facilities and equipment. However, the Village Ministry had no right or entitlement to publicity for the Grant through the School District's website or other communication outlets (req. admis. 15-16). Additionally, the School District did not have any authority to control the Grant, and all decisions concerning its approval, award, fiscal management, and revocation were made by the SCDE (req. admis. 24-25; White aff. ¶ 10).

The plaintiff contends that the School District "contrived allegations against [her] and called in accusations of non-compliance" to the SCDE" (pl. aff. ¶ 15). She complains that Dr. White made false allegations to the SCDE that her husband and son, who "had imperfect State Law Enforcement Division ("SLED") checks," were coming to the school during the after-school program (*id.* ¶¶ 13, 17). She further claims that the School District had "total control" of the Grant during the 2009-2010 school year, and the School

District dropped the African drum/dance and cultural rap classes from the program, which put them in noncompliance with the Grant (*id.* ¶ 19).

The SCDE later removed the Village Ministry as the director and fiscal agent of the Grant upon its findings that the Village Ministry was not in compliance with the terms of the Grant (req. admis. 28; White aff. ¶ 10). The plaintiff alleges that the Grant "was taken without following US guidelines and protocols" (pl. aff. ¶ 17). Notably, the School District did not revoke the Grant, nor did it have any authority to control or make any decisions regarding the revocation of the Grant (req. admis. 24-25, 28; White aff. ¶ 10). The Village Ministry has appealed the SCDE's revocation of the Grant to the United States Department of Education (the "USDE"), which appeal is pending (req. admis. 26-27; pl. aff. ¶ 18). The School District is not a party to the appeal.

The plaintiff admits that she was reprimanded and counseled by Principal Redmond and Dr. Andrews for the following conduct and performance issues during the 2008-2009 school year:

> (1) allowing her role with the 21st Century Grant Community Learning Centers Grant to interfere with her primary employment responsibilities as a teacher;
>
> (2) violating policies concerning visitors by allowing her husband and son on Whitlock's campus despite their having been prohibited from campus and volunteering with students because of their unsatisfactory criminal backgrounds;
>
> (3) violating policies concerning authorization for student participation in fundraisers and field trips and intentionally misrepresenting to Principal Redmond that she had obtained proper parental consent for students to participate in field trips when she had not;
>
> (4) violating policies concerning her obligation to remain in her classroom until 3:30 p.m. or until all students had been properly dismissed each day;

(5) making false and misleading representations to Principal Redmond regarding her availability to attend mandatory teachers' meetings;

(6) failing to follow the instructional plan for use of Whitlock's Reading Academy Lab;

(7) calling students derogatory names such as "stupid" and "slow" and making other inappropriate comments to students;

(8) being combative and insubordinate during meetings and in communications with administrators; and

(9) violating policies concerning personal mobile telephone use during student instructional time.

(Req. admis. 1-10, 14, 19; *see also* White aff. ¶ 6).

The plaintiff states that "[i]n, the fall of 2008 through February of 2009, I was harassed by [Principal Redmond and the School District]" (pl. aff. ¶ 6). Specifically, she claims as follows:

> I was bar aided [sic] daily with taunts, harassing messages, and non cooperation to the workings for the 21st Century after-school program. The grant's compliance relied on the dismissal of the students at 3:00 pm and the program ending at 6:00 pm. The principal would constantly refuse to release the participants at 3:00 pm. Also, during this prolonged malicious behavior on the part of [the School District], the principal would hold the students in the regular classrooms until nearly 4:00 pm. Also, the . . . principle would not fully reprimand the classroom students. For example, I was called names by a student who was not reprimanded. I have my copy of this same student's disciplinary referrals and the school's failure to follow the [School District's] discipline policy.

5

(pl. aff. ¶ 6). The plaintiff states in her affidavit that on February 9, 2009, she consulted with the School District's Superintendent, Dr. White, for "guidance/protocol for the filing of an harassment charge against the principal [Principal Redmond]." She further states that she outlined her "problems" in a letter that was emailed to Dr. White. She states that she also had a meeting with Dr. White to discuss the "mishandling of the many discipline referrals" (*id.* ¶ 8). On February 18, 2009, the plaintiff met with Dr. Andrews, the School District's Assistant Superintendent for Personnel and Pupil Services. The plaintiff claims Dr. Andrews "maligned and taunted [her] for two hours" (*id.* ¶ 9). In Dr. Andrews' summary of the meeting, she noted that the plaintiff was defensive, critical, and combative. She stated that, based upon her review of the plaintiff's job performance and meeting with the plaintiff and Principal Redmond, she concluded that the plaintiff was not meeting the expectations for teachers employed in the School District. Accordingly, she recommended to Dr. White that the plaintiff be placed on a performance improvement plan and probationary status for the remainder of the 2008-2009 school year (White 2nd aff., ex. A, doc. 52-2 at pp. 12-13).

On May 14, 2009, Dr. White met with the plaintiff to discuss these issues and her continued employment with the School District. The plaintiff was offered a probationary contract and was placed on a written plan of improvement for the 2009-2010 year. The plaintiff claims the plan of improvement was retaliation by Dr. White (White aff. ¶ 6; pl. aff. ¶ 10). In a letter dated May 14th, Dr. White set forth the plaintiff's employment history with the School District, noting that she had "experienced conflict of one kind or another through at least three different principals, four district level administrators, and five superintendents" (White 2nd aff., ex. A, doc. 52-2 at p. 9). The letter contained a notification of deficiencies, plan of improvement, and conditions of continued employment for the plaintiff, and the plaintiff signed an acknowledgment of receipt of the letter and conference with Dr. White and Dr. Andrews (*id.* at pp. 9-11).

According to Dr. White, the plaintiff failed to comply with the terms and conditions of her plan of improvement and probationary employment status (White aff. ¶

7). As the plaintiff admits, she was reprimanded and counseled for the following conduct and performance issues during the 2009-2010 school year:

> (1) copying other teachers' lesson plans in violation of policies and Dr. Foster's specific directives;
>
> (2) failing to meet with her instructional coach as directed by Dr. Foster;
>
> (3) continuing to violate policies and directives concerning her husband's and son's presence on campus; and
>
> (4) continuing to miss mandatory teachers' meetings.

(Req. admis. 2, 5, 11, 12; *see also* White aff. ¶ 7). Dr. White testified in his affidavit that the plaintiff's continued misconduct violated her plan of improvement, School District policies, and the basic expectations and standards for a teacher employed by the School District. As a result, Dr. White recommended to the Board that the plaintiff be terminated from employment with the School District (White aff. ¶¶ 7-8).

As a continuing contract teacher, the plaintiff was entitled to certain employment rights and protections under the South Carolina Teacher Employment and Dismissal Act ("TEDA"), S.C. Code Ann. § 59-25-410 *et seq*. Prior to her dismissal, the plaintiff received a full adversarial hearing before the Board, during which she was represented by counsel and given the opportunity to present witnesses and documentary evidence, cross-examine the School District witnesses, and present defenses to the charges against her (req. admis. 21; White aff. ¶ 8). The hearing spanned approximately 18 hours over three days commencing on March 24, 2010, resuming on April 20, and concluding on April 26, 2010 (req. admis. 21). On May 6, 2010, the Board issued its decision finding good and sufficient reasons to terminate the plaintiff's employment (req. admis. 20-21; White aff. ¶¶ 5, 8). The plaintiff did not appeal the Board's decision as provided under TEDA (req. admis. 23).

On April 22, 2010, the plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that the School District discriminated against her "based on my race (Black) and in retaliation for engaging in a protected activity." She checked the boxes for race discrimination and retaliation. In the narrative section, the plaintiff's alleges she was "harassed" by Principal Redmond from the Spring of 2008 through February 2009, and she reported Principal Redmond for harassment in February 2009. She further claims that she was harassed by Dr. White from February 2009 through the date of her discharge (EEOC charge, doc. 1-1). On January 24, 2011, the EEOC issued a Notice of Right to Sue. The plaintiff filed her complaint in this action on April 25, 2011.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

8

existence of a mere scintilla of evidence in support of the the the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Due Process***

The plaintiff alleges in her complaint that the defendant's violation of several federal statutes "violates protection for teachers in South Carolina as outlined in [TEDA]" (amended comp. ¶ 29). However, as argued by the defendant, the facts before this court are undisputed that the plaintiff was afforded all rights and protections to which she was entitled under TEDA with regards to her dismissal from employment. The plaintiff did not appeal her dismissal pursuant to TEDA, and the Board's decision is therefore final. S.C. Code Ann. § 59-25-480. In her response in opposition to the motion for summary judgment, the plaintiff contends, "Prior to her dismissal, Plaintiff received a pretextual hearing before the Defendant. Plaintiff denies/disputes she was afforded all due process rights to which she was entitled" (pl. resp. m.s.j. at 4). The plaintiff's amended complaint does not allege a lack of due process in connection with her termination. However, even if the plaintiff alleged such a claim, it would fail given the record before this court. The federal standard for due process in connection with the termination of a school district employee requires that the employee receives oral or written notice of the charges against her, an explanation of the school district's evidence, and an opportunity to present her side of the story. *Green v. Clarendon County School District*, 923 F. Supp. 829, 841-42 (D.S.C. 1996). In the instant case, it is undisputed that prior to her termination the plaintiff received a full adversarial hearing before the Board, during which she was represented by counsel and given the opportunity to present witnesses and documentary evidence, cross-examine

the School District witnesses, and present defenses to the charges against her. The plaintiff has presented absolutely no evidence supporting her allegations. Based upon the foregoing, summary judgment should be granted as to any federal due process claim.

*Sex Discrimination*

In her amended complaint, the plaintiff complains of sex discrimination (amended comp. ¶¶ 25-26), alleging she "was in a hostile/threatening work environment" and was "treated differently than similarly situated employees due to [her] sex" (*id.*). On her EEOC charge form, the plaintiff did not check the box for sex discrimination, but did check the blocks for race discrimination and retaliation (doc. 1-1). In her narrative, she states that she was "harassed by Charles Redmond, Principal" and that she reported Principal Redmond's alleged harassment. She also claims that she "was harassed by Thomas White, Superintendent." Later in the narrative, she states that she believes she was discriminated against "based on [her] race (Black) and in retaliation for engaging in protected activity" (doc. 1-1). The charge does not even remotely allege sex discrimination and is not reasonably related to her EEOC charge for discrimination based on race and retaliation. Accordingly, the sex discrimination claim is barred due to lack of administrative exhaustion. *Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005).

Furthermore, even if the plaintiff had administratively exhausted such a claim, she has failed to come forward with *any* evidence supporting a hostile work environment or sex discrimination claim as alleged in her amended complaint. In her affidavit, the plaintiff states several times that she was harassed and discriminated against, but she has failed to show any evidence that the alleged harassment and discrimination were based upon her gender (*see* pl. aff. ¶¶ 6, 9, 11, 13, 15, 20, 38, 39). The plaintiff also submitted the affidavits of Lisa Coates, Linda Glenn, Rayfield Harrison, Ean Reed, and David Smith (*see* doc. 49-2). However, these affidavits also do not identify any testimony or evidence supporting the plaintiff's sex discrimination or hostile work environment claims. Based upon the foregoing, summary judgment should be granted.

10

*Race Discrimination*

To establish a *prima facie* case with respect to her race discrimination claim, the plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he suffered adverse employment action; (3) [s]he was performing her job duties at a level that met h[er] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here, the plaintiff has not alleged any facts or produced any evidence in support of her race discrimination claim that would show she was meeting the School District's legitimate performance expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149-50 (4th Cir. 2003) (African-American probationary teacher failed to establish discriminatory discharge absent showing he was performing at his employer's legitimate performance expectations at time he was terminated).

In her affidavit submitted in opposition to the motion for summary judgment, the plaintiff does not identify any actual evidence of discriminatory treatment by the School District, does not identify any evidence that would show she was meeting the School District's legitimate performance expectations, and does not identify any evidence of similarly situated individuals accumulating comparable performance records and receiving less severe employment actions than she received. The plaintiff also submitted the affidavits of Lisa Coates, Linda Glenn, and Rayfield Harrison (*see* doc. 49-2). As argued by the defendant, these affidavits do not identify any testimony or evidence related to the plaintiff's employment with the School District as an English and Language Arts teacher, her performance during the course of that employment, nor the circumstances surrounding her termination from such employment.[2] Furthermore, the affidavits of Ean Reed and David

---

[2]Rayfield Harrison, a math teacher at Whitlock, stated in his affidavit that he has "been a witness to [the plaintiff's] diligent work in the afternoon program" (Harrison aff. ¶ 4, doc. 49-2 at p. 15). He provided no testimony, however, regarding the plaintiff's positive performance of her job

11

Smith (*see* doc. 49-2) vaguely reference particular incidents during the course of the plaintiff's employment with the School District, but they do not at all identify any actual evidence of discriminatory treatment by the School District, any evidence that would show she was meeting the School District's legitimate performance expectations, nor any evidence of similarly situated individuals accumulating comparable performance records and receiving less severe employment actions than the plaintiff received.

To the contrary, the School District has presented substantial evidence, including but not limited to the plaintiff's own admissions, that she in fact was not performing at a level that met the School District's legitimate expectations when she was placed on the plan of improvement or when she was terminated (req. admis. 1-13; White aff. ¶ 5-7). As the Superintendent and the Board concluded, the plaintiff persistently engaged in unprofessional conduct and insubordinate behavior in violation of School District policies and the basic expectations and standards for a teacher employed by the School District. *King*, 328 F.3d at 149 (it is the perception of the decision maker that is relevant, not the self-assessment of the plaintiff).

Under the burden-shifting method of proof of *McDonnell Douglas*, 411 U.S. 792, if the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). In *Reeves*, the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does

---

as a teacher with the School District. Further, even if he had provided such testimony, the Fourth Circuit has "long rejected the relevance of such testimony and held it to be insufficient to establish the third required element of a *prima facie* discrimination case." *King*, 328 F.3d at 149 (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir.2000) ("The alleged opinions of Hawkins' co-workers as to the quality of her work are [ ] close to irrelevant."); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998) ("[A]lthough the affidavits put forth by Tinsley document the fact that certain co-workers, Bank customers, and attorneys believed Tinsley was doing a good job, they fail to address whether management honestly believed that Tinsley was doing a good job.")).

not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 146-47 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

Even if the plaintiff could establish a *prima facie* case, the School District has shown legitimate, nondiscriminatory reasons for terminating the plaintiff's employment. The Superintendent and the Board found, and the record in this case establishes, that the plaintiff persistently violated School District policies and failed to improve her performance despite notice, assistance, and reasonable time. The plaintiff has produced absolutely no evidence that the defendant's stated reasons for terminating her employment were pretext for racial discrimination. Accordingly, summary judgment is appropriate.

The plaintiff also alleges that the revocation of the Grant was an adverse employment action against her. However, as argued by the defendant, the plaintiff's Grant work was solely in her role as agent for the Village Ministry, and it was not a contractual part of her teaching duties or any other aspect of her employment responsibilities with the School District (req. admis. 14; White aff. ¶ 9). It is also undisputed that the SCDE, not the School District, revoked the Grant (req. admis. 24-25; White aff. ¶ 10). The Village Ministry has filed an appeal with the USDE challenging the SCDE's actions in revoking the Grant, which appeal is pending and to which the School District is not a party (am. comp. ¶ 21; answer ¶ 21; req. admis. 26-27). The plaintiff has not alleged any facts or produced any

evidence that the revocation of the Grant adversely affected or constituted a significant change in her employment status with the School District or that the School District revoked the Grant because of any unlawful discriminatory motive.

To the extent the plaintiff has alleged a hostile work environment claim based upon her race, such claim also fails. To proceed on a Title VII hostile work environment claim, "a plaintiff must show 'that the offending conduct (1) was unwelcome, (2) was because of [her race], (3) was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment, and (4) was imputable to [her] employer.'" *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir.2008) (quoting *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc)). Establishing the third element requires that the plaintiff show that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir.2008). Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

The plaintiff states several times in her affidavit that she was harassed and discriminated against (*see* pl. aff. ¶¶ 6, 9, 13, 15, 20, 38, 39). However, she has provided no particulars regarding such alleged harassment, and she has failed to show any evidence that the alleged harassment was based upon her race. Furthermore, two of the persons she claims harassed her and were involved in making decisions relating to her employment, Principal Redmond and Dr. Andrews, are also African-American, which weakens any inference that she was harassed and discriminated against because of her race. *See Orgain v. City of Salisbury, Md.*, No. 07-1689, 2008 WL 5396483, at *13 (4th Cir. 2008). Based upon the foregoing, summary judgment should be granted on the plaintiff's race claims.

*Retaliation*

To establish a *prima facie* case of retaliation, the plaintiff must prove: 1) she engaged in a protected act; 2) an adverse employment action was taken against her; and 3) there is a causal connection between the protected act and the adverse employment action. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). "If a plaintiff 'puts forth sufficient evidence to establish a *prima facie* case of retaliation' and a defendant 'offers a non-discriminatory explanation' for his termination, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2006)).

First, the plaintiff has not sufficiently alleged or shown that she engaged in any protected activity under Title VII. "Protected activity" constitutes opposing any practice made unlawful by Title VII or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). In support of her retaliation claim, the plaintiff alleges that, in response to Principal Redmond's decisions regarding the dismissal of students for the afternoon program and his handling of student discipline referrals, she consulted with the Superintendent for the protocol for filing a harassment charge against Principal Redmond (amended comp. ¶¶ 9-13, 26, 29). As argued by the defendant, the plaintiff's complaints regarding Principal Redmond because she disagreed with his administrative decisions are not protected activities under Title VII. *Owens v. Accuscribe Transcription Services, LLC*, C.A. No. 2:07-3212-JFA-BM, 2010 WL 297792, at *15 (D.S.C. 2010) ("[I]n order to succeed on her retaliation claim, Plaintiff's evidence must show that the reason she was disciplined or terminated was because she complained about race discrimination, not because the Defendant made a mistake, was incorrect in its findings concerning Plaintiff's employment, or even that her supervisor did not like her."). Expressing dissatisfaction and a feeling of unfairness with an employment action is not statutorily "protected activity" under Title VII's anti-retaliation provisions. *See McNair v. Computer Data Systems, Inc.*, No. 98-1110, 1999 WL 30959, at *5 (4th Cir. 1999); *see also Miles v. Dell, Inc.,* 429 F.3d 480*,* 492

(4th Cir. 2005) (to be statutorily protected activity, complaint to management about adverse employment action must be couched in terms of unlawful discrimination). The plaintiff has not alleged or produced any evidence that she ever complained to the School District about any unlawful employment practices by Principal Redmond or any other School District employee.[3]

Further, even assuming that the plaintiff's allegations constitute a protected activity, she cannot establish a causal connection because too much time has elapsed. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close' . . . ." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The plaintiff's alleged protected activity occurred in February 2009, which was about three months before she was placed on a plan of improvement and approximately one year before the Board terminated her employment (am. comp. ¶¶ 11, 13). The Fourth Circuit has found that a gap of three to four months is too long to establish temporal proximity, and such an interval is too long to establish causation without other evidence of retaliation. *Lawrence v. Veolia Transp. Servs., Inc.*, C.A. No. 2:07-2722-MBS, 2009 WL 857394, at *4 (D.S.C. 2009); *see Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."). The plaintiff has not produced any other evidence of retaliation to support her claim.

Lastly, even assuming the plaintiff could prove her *prima facie* case, the defendant has shown legitimate, nondiscriminatory reasons for its adverse actions. As set forth above, the School District's reasons for placing the plaintiff on a plan of improvement and dismissing the plaintiff are clearly set forth in the Board's decision (White aff. ¶¶ 5, 8,

---

[3]The plaintiff does not allege retaliation based upon her filing of the EEOC charge, which she filed after the Superintendent's recommendation to the Board and the commencement of the Board's dismissal hearing.

16

ex. A). The record is devoid of any evidence that the School District's stated reasons were not its true reasons and that its adverse employment actions were the result of any retaliatory motive. Based on the foregoing, the defendant is entitled to summary judgment as to the plaintiff's retaliation claim.

### *Remaining Claims*

In her one cause of action, the plaintiff strings together a list of additional federal statutory and constitutional grounds for relief: (a) 29 U.S.C. § 211 of the Fair Labor Standards Act; (b) 29 U.S.C. § 626 of the Age Discrimination in Employment Act; (c) 5 U.S.C. § 552 of the Freedom of Information Act; (d) 2 U.S.C. § 1311 and 3 U.S.C. § 411 extending discrimination protections to federal government employees; and (e) 42 U.S.C. § 12117 of the Americans with Disabilities Act (amended comp. ¶ 29). However, the plaintiff has failed to allege any facts or produce any evidence to establish a violation of any of these statutes by the defendant. Similarly, the plaintiff has not alleged any facts or produced any evidence to establish a violation of her First Amendment or Fourth Amendment rights by the defendant. As argued by the defendant, these unsupported claims are frivolous, and the School District is entitled to summary judgment. Furthermore, having found that the defendant is entitled to summary judgment on the plaintiff's federal claims, it is recommended that the court decline to exercise supplemental jurisdiction over any remaining claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment (doc. 40) be granted. Should the district court adopt this court's recommendation, any pending nondispositive motions will be rendered moot.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

April 5, 2012
Greenville, South Carolina

17