# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Carolyn E. Reed-Smith, ) | |
| ) | Civil Action No.: 7:11-cv-00970-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Spartanburg County School District ) | |
| Seven, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Before the court is Defendant Spartanburg County School District Seven's ("the School District") Motion for Attorneys' Fees [Dkt. No. 71]. The School District seeks $59,199.50 in attorneys' fees as the prevailing party pursuant to 42 U.S.C. § 1988. Having carefully considered this motion, the record in this case, and the applicable law, the court grants the School District's request for the recovery of attorneys' fees from Plaintiff Carolyn E. Reed-Smith ("Reed-Smith") as limited herein.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The instant motion arises from an employment discrimination case. Reed-Smith is an African American female who was employed by the School District as a junior high school teacher. Reed-Smith's employment with the School District was terminated on May 6, 2010, following a full adversarial hearing before the School Board.[1]

On April 22, 2010, Reed-Smith filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and

---

[1] The hearing spanned three days commencing on March 24, 2010, resuming on April 20, and concluding on April 26, 2010.

1

engaging in a protected activity. Specifically, she claims that her supervisors harassed her and that the School District terminated her employment[2] on the basis of race discrimination and in retaliation for reporting the harassment. On January 24, 2011, the EEOC issued a Notice of Right to Sue as to Reed-Smith's race discrimination and retaliation claims. [Dkt. No. 1-1]. On April 25, 2011, Reed-Smith, proceeding *pro se*, filed her initial Complaint [Dkt. No. 1] alleging race discrimination and retaliation. Reed-Smith subsequently retained counsel and filed an Amended Complaint [Dkt No. 34] citing violations of 42 U.S.C. §§ 1981 and 1983, and 42 §§ 2000e-2 and 2000e-5. The Amended Complaint also alleged violations of the following laws: 29 U.S.C. § 211 of the Fair Labor Standards Act; 29 U.S.C. § 626 of the Age Discrimination in Employment Act; 5 U.S.C. § 552 of the Freedom of Information Act; 2 U.S.C. § 1311 and 3 U.S.C. § 411 extending discrimination protections to federal government employees; and 42 U.S.C. § 12117 of the Americans with Disabilities Act. Reed-Smith also alleged violations of her First and Fourth Amendment rights.

On November 28, 2011, the School District filed a Motion for Summary Judgment [Dkt. No. 40] to which Reed-Smith filed a Response in Opposition [Dkt. No. 49]. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina, a Magistrate Judge issued a Report and Recommendation ("Report") [Dkt. No. 62] to this court recommending that the School District's Motion for Summary Judgment [Dkt. No. 40] be granted. Reed-Smith filed Objections to the Magistrate Judge's Report [Dkt. No. 65] and the School District filed a Reply [Dkt. No. 67] citing Reed-Smith's failure to identify specific objections to the Report and her failure to provide any basis for her objections. On May 31, 2012, this court issued an Order

---

[2] Reed-Smith's EEOC filing places the date of her termination in March 2010, however she was not actually terminated until May 6, 2010.

[Dkt. No. 68] accepting the Report and granting summary judgment in favor of the School District. The School District subsequently filed the instant motion on the grounds that Reed-Smith's claims were frivolous, groundless and unreasonable.

The School District's motion included a Declaration of Attorneys' Fees [Dkt. No 71-2] listing only the total hours worked and the hourly rates charged by the attorneys participating in the case. The court issued an Order [Dkt. No. 82] requesting that counsel for the School District provide detailed time records to support the fee request. Defense Counsel complied. The Order was also mailed to Reed-Smith [Dkt. No. 83] but she has provided no response.

## DISCUSSION

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, authorizes the award of attorneys' fees to prevailing parties in certain civil rights actions. Specifically, the statue provides that "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

The United States Supreme Court has recognized that § 1988 applies not only to prevailing plaintiffs, but prevailing defendants as well. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *see also Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978) (authorizing the award of fees to prevailing defendants under 42 U.S.C. § 2000e-5(k)). However, "when awarding attorney's fees under a civil rights statute, 'prevailing defendants are to be treated differently from prevailing plaintiffs, even though the statutory language is neutral.'" *Hunt v. Lee*, 166 F. App'x 669, 671 (4th Cir. 2006) (quoting *Bryant Woods Inn, Inc. v. Howard County, Md.,* 124 F.3d 597, 606 (4th Cir. 1997). Specifically, "a plaintiff should not be assessed

3

his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes,* 449 U.S. at 15 (quoting *Christiansburg*, 434 U.S. at 422).

A plaintiff's claims are not frivolous, groundless or without foundation merely because "upon careful examination, [the claims] prove legally insufficient to require a trial." *Hughes*, 449 U.S. *at* 15-16. Moreover, subjective bad faith is not required for a prevailing defendant to recover attorneys' fees. *Christiansburg*, 434 U.S. at 422. However, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id*.

The fact that prevailing defendants should be awarded fees on such limited grounds is based on recognition of the potential chilling effect fee awards may have on civil rights plaintiffs. *Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir. 1983). "Assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement" of civil rights laws. *Christiansburg, 434 U.S. at 422.* As a result, courts must "be particularly sensitive to the broad remedial purposes" of civil rights laws and must consider "the danger that attorneys' fee awards in favor of defendants can discourage 'all but the most airtight claims.'" *Arnold*, 719 F.2d at 65 (quoting *Christiansburg,* 434 U.S. at 422).

For these reasons, awards of attorneys' fees to prevailing defendants should be "used sparingly in those cases which the plaintiff presses a claim which h*e knew or should have known* was groundless, frivolous or unreasonable." *Arnold*, 719 F.2d at 65 (emphasis added). In deciding whether to award attorneys' fees to prevailing defendants, "district courts must 'carefully analyze[] plaintiffs' legal claim, the evidence adduced in support of that claim, and when plaintiffs

should have realized that the claim was groundless.'" *Hunt,* 166 F. App'x at 671 (4th Cir. 2006) (citing *Hutchinson v. Staton,* 994 F.2d 1076, 1079 (4th Cir. 1993)).

The School District contends that Reed-Smith's claims were groundless from the outset of this litigation. The School District further asserts that the frivolous and groundless nature of her claims should have become apparent during the discovery phase or, at the very latest, upon the School District's filing of its Motion for Summary Judgment.

The court cannot in hindsight label Reed-Smith's initial filings frivolous. First, Reed-Smith received a Right to Sue notice from the EEOC, which suggests, at least, that Reed-Smith's allegations could have supported a claim for relief had she been able to produce sufficient evidence. Furthermore, Reed-Smith initially filed *pro se*, and the Supreme Court has recognized that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Hughes*, 499 U.S. at 15. Therefore, the court cannot agree with the School District that Reed-Smith should have known that her claim was frivolous, groundless or unreasonable when she initially brought her claim.

Further, while the discovery process might have made it increasingly apparent that Reed-Smith's case was lacking in material evidence, the court cannot fault Reed-Smith for continuing to pursue her claims. The record shows that Reed-Smith requested additional time to complete discovery. *See* Motion for Extension of Time to Complete Discovery and Mediate. [Dkt. No. 42]. This request suggests she believed she could find more information to support her claims.

The frivolous and groundless nature of Reed-Smith's claims became evident during the Summary Judgment phase of this litigation. Reed-Smith's Motion in Opposition to Summary Judgment [Dkt. No. 49] reveals that her claims lacked any foundation in the record apart from her

5

own conclusory assertions. First, much of Reed-Smith's motion mirrors the School District's summary judgment motion; it uses strikingly similar language but merely reverses the affirmative and negative assertions made by the School District so that the proposition stated would support her position. In addition, Reed-Smith's allegations of discriminatory intent are entirely conclusory. Reed-Smith relies on six affidavits to provide evidence in support of her claims. The first affidavit is Reed-Smith's own, in which she asserts, nearly verbatim, the same unsupported claims made in her Amended Complaint. The remaining affidavits[3] offer nothing more than vague, conclusory statements, none of which address Reed-Smith's termination and none of which provide any evidence to support the contention that the School District discriminated against Reed-Smith or took retaliatory action against her.

The Magistrate Judge's Report confirmed that Reed-Smith's claims were entirely without evidentiary foundation. Specifically, the Magistrate Judge found that Reed-Smith did not identify any evidence of discriminatory treatment based on race, no evidence that she was performing her job in a way that would meet her employer's expectations, and no evidence of similarly situated employees of the School District with similar performance records who received less severe employment actions. In short, Reed-Smith failed to present any evidence that would

---

[3] Reed-Smith presents an affidavit from a fellow teacher at the school where Reed-Smith works, who testified that Reed-Smith was diligent and worked hard; two affidavits from parents of children who attend schools in the School District who make general and unsupported allegations that their children were disciplined differently than other students in the district, presumably on the basis of their race; and an affidavit from Reed-Smith's husband that offered testimony about his presence on school grounds, which was one of the many issues addressed in Reed-Smith's disciplinary record. The Affidavit of Ean Reed states that he overheard Dr. Andrews, the Assistant Superintendent for Personnel and Pupil Services and an African American female, "rak[ing] Reed-Smith over the coals for trying to get her to do something inappropriate." [Dkt. No. 49-2, at 20]. He does not state what that inappropriate act was, but most importantly, he does not allege any facts that would support an inference of discriminatory or retaliatory intent.

have established a *prima facie* case of race discrimination. The Magistrate Judge also determined that Reed-Smith failed to demonstrate her *prima facie* case of retaliation, finding that Reed-Smith's allegations of harassment by her supervisor, Principle Redmond, were merely complaints about decisions he made and therefore, not a protected activity under Title VII. The Magistrate Judge further found that, even if her complaints did constitute protected activity, Reed-Smith could not establish a causal connection between her complaint and her termination because too much time had elapsed between the time she made the complaint and her termination from employment. With regard to both the discrimination claim and the retaliation claim, the Magistrate Judge noted that Reed-Smith presented no evidence that would have rebutted the school district's legitimate, non-discriminatory reason for terminating her employment or shown that its reason was a pretext for discrimination.

The Magistrate Judge also found that Reed-Smith's sex discrimination claim was barred due to lack of administrative exhaustion, but that even if it had survived, Reed-Smith had failed to come forward with any evidence supporting a hostile work environment or sex discrimination claim. Finally, the Magistrate Judge dismissed the remainder of Reed-Smith's statutory and constitutional claims for relief on the grounds they were frivolous. Magistrate Judge's Report and Recommendation [Dkt. No. 62, at 17].

Undeterred, Reed-Smith continued the litigation, filing Objections to the Magistrate Judge's Report [Dkt. No. 65]. In an Order [Dkt. No. 68], this court determined that Reed-Smith's objections merely restated arguments made in her Motion in Opposition to Summary Judgment and only set forth negative, conclusory assertions to the School District's arguments. For those reasons, the court accepted the Magistrate Judge's Report without any additional explanation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that absent specific objections, the

court need not give additional explanation for accepting the Magistrate Judge's Report).

Reed-Smith further extended the litigation by filing a *pro se* Reply [Dkt. No. 72] to this court's Order in which she ostensibly attempts to relitigate her entire case. Reed-Smith also appealed this court's Order to the United States Court of Appeals for the Fourth Circuit.[4] [Dkt. No. 73]. Predictably, the Fourth Circuit's Opinion [Dkt. No. 79] affirmed the court's Order, holding that Reed-Smith's failure to file specific objections to the Report waived her right to appellate review. This fact was explained in this court's Order.

For the reasons stated above, the court finds that Reed-Smith's continued pursuit of this litigation following the issuance of the Magistrate Judge's Report constitutes a groundless and frivolous continuation of litigation that had no chance of success. At that point, she should have known that her claims were groundless and without foundation in the law, even if she still believed that she had been wronged. Therefore, the School District is entitled to recover some amount of attorneys' fees pursuant 42 U.S.C. § 1988 and *Hughes*.

Time records [Dkt. No. 85-1] submitted by the School District's counsel shows that counsel expended a total of 91.1 hours on this case from the time the Magistrate Judge filed his Report and Recommendation until defense counsel filed its last document in this case. Multiplying the total number of hours by the claimed rate of $175.00 per hour results in a fee amount of $15,942.50. The court notes that 33.5 hours of the 91.1 hours expended was devoted to researching, writing and compiling information in support of the School District's Motion for Attorneys' Fees. Generally, "[t]ime spent defending entitlement to attorneys' fees is properly

---

[4] While Reed-Smith filed her Reply and her appeal *pro se*, the court finds she does not deserve the same deference at this stage of the litigation as was given for her initial *pro se* filings. By the time Reed-Smith made these filings, her claims had been analyzed and their shortcomings explained by a federal magistrate judge. Therefore, she had ample information such that she should have known that her claims were factually insufficient to prevail on any legal theory.

compensable in a § 1988 fee award." *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986). However, given that the policy for awarding attorneys' fees to prevailing defendants is primarily aimed at preventing frivolous litigation rather than reimbursing successful defendants, the court declines to award fees for time spent seeking attorneys' fees. Therefore, the court in its discretion reduces the amount of time for which attorneys' fees can be awarded from 91.1 hours to 57.6 hours. This reduces the total compensable amount of fees to $10,080.00.

Having determined that the School District is entitled to recover some attorney's fees in this case, the court must now determine the reasonable amount of recovery. In cases where attorneys' fees are awarded to the prevailing defendant, determining what is reasonable requires a consideration of what the plaintiff is able to pay. *See DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (vacating and remanding an award of attorneys' fees against the plaintiff where the court failed to take the plaintiff's financial resources into account). This is so because the "policy of deterring frivolous suits is not served by forcing the misguided [§ 1983] plaintiff into financial ruin simply because he prosecuted a groundless case." *Arnold*, 719 F.2d at 68. Furthermore, "fee awards that callously disregard the financial straits of a losing plaintiff would soon defeat the overarching remedial purposes of Title VII." *Id*.

The very nature of the suit in this case, stemming as it does from the firing of a public school teacher, suggests that Reed-Smith could be extremely burdened by a judgment of $10,080.00 against her. However, Reed-Smith has failed to put forth any evidence regarding her financial ability to pay such a judgment. She provided no answer to the School District's initial request for attorneys' fees.[5] Additionally, Reed-Smith provided no response to the court's Order

---

[5] The court notes that the School District filed its Motion for Attorneys' Fees on June 14, 2012. On June 28, 2012, Reed-Smith notified the court that her attorney had been relieved, but it is not

9

[Dkt. No. 82] issued on January 29, 2013, directing the School District to supplement its Motion for Attorneys' Fees with detailed time records.  If she had not been put on notice of the School District's request previously, this mailing was sufficient to put her on notice of the District's claims.

Therefore, while the court grants the School District's Motion for Attorneys' Fees [Dkt. No. 71], it must also seek additional information regarding Reed-Smith's financial situation before making a final determination of the amount owed.  *See DeBauche,* 191 F.3d 499, 511 (remanding an award of attorneys' fees where district court failed to take plaintiff's available financial resources into account); *Arnold*, 719 F.2d at 69 (finding that plaintiff was gainfully employed and apparently able to pay an attorney's fee award on reasonable terms to be arranged).  The court orders Reed-Smith to provide information regarding her monthly income and employment status from January 2012 through March 2013.  Reed-Smith is ordered to comply within thirty (30) days of the issuance of this Order.  If she fails to comply, the court may order attorneys' fees consistent with the law and facts considered herein.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

March 20, 2013
Greenville, South Carolina

---

clear when exactly the attorney-client relationship was severed.  The court concedes it is possible that Reed-Smith did not receive initial notice of Defendant's Motion for Attorney's Fees.